**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
CONSTANCE DAVIS,              :
                              :    CIVIL ACTION NO. 05-2201 (MLC)
     Plaintiff,               :
                              :         MEMORANDUM OPINION
     v.                       :
                              :
JOHN E. POTTER, et al.,       :
                              :
     Defendants.              :
_____ :
```

**COOPER, District Judge**

Plaintiff — Constance Davis — claims defendants, John E.
Potter and the United States Postal Service, violated Title VII
by (1) discriminating against her based upon her sex, and (2)
retaliating against her for engaging in protected activity.  (Am.
Compl., at 1-2.)  The defendants move for summary judgment in
their favor pursuant to Federal Rule of Civil Procedure ("Rule")
56.  (Dkt. entry no. 18.)  Plaintiff opposes the motion.  (Dkt.
entry no. 21.)  For the reasons stated herein, the Court will
grant the motion in part and deny the motion in part.

## BACKGROUND

Plaintiff, who is a woman, is the defendants' employee at
the Trenton Processing and Distribution Center ("Trenton P&DC").
(Am. Compl., at 1.)  Plaintiff was appointed to the position of
Group Leader, Custodial, Tour III, within Trenton P&DC beginning
in August 1997.  (Id., at 1, 4.)  The only other Group Leader at
Trenton P&DC during the relevant time period was George
Watlington, who was the Group Leader for Tour II from March 1998

through September 2000.  (Pl. Ex. A., Transcript of 5-14-02 Adm. Hearing ("Adm. Tr."), at 28, 31.)[1]  Tour III works the 3-11 p.m. shift at Trenton D&C while Tour II works the 7 p.m. - 3 a.m. shift.  (Id. at 4.)  Plaintiff's supervisors were William DeLaCruz and John Dalton.  (Id. at 4.)  Plaintiff asserts they were also Watlington's supervisors, which defendants dispute. (See Pl. Stmt. of Facts, ¶ 9; Defs. Stmt. of Facts, at ¶ 7.)

Plaintiff alleges that beginning in March of 1998 DeLaCruz and Dalton assigned her to perform approximately 60% - 70% laborer custodial duties and only 40% - 30% group leader duties. (Am. Compl., at 6; Adm. Tr., at 16-19.)  The position description for "laborer, custodial, PS-03" states:

FUNCTIONAL PURPOSE
        Performs manual labor in connection with maintenance and cleaning of the buildings and grounds of a postal facility; assists in firing low pressure boiler and in making minor repairs to the building and equipment.

DUTIES AND RESPONSIBILITIES
1. Makes or assists in making minor maintenance repairs to building and equipment.

2. In smaller buildings assists the fireman-laborer in firing the boiler; in firemen-laborer's absence fires and cleans the boiler.

3. Operates a variety of power driven equipment such as floor scrubbers, floor sanders, waxers, or wall washers . . . washes walls and ceilings from scaffolding.

---

[1]  Plaintiff's counsel did not electronically file the exhibits with the opposition brief docketed as entry number 21, but did submit the exhibits attached to the courtesy copy of the opposition brief submitted to the Court.

4. Performs general laboring duties such as uncrating and assembling furniture and fixtures using bolts and screws for assembly, loading and unloading supplies and equipment.

5. Performs janitorial duties such as cleaning, scrubbing, waxing, and polishing floors; washes walls and ceiling; dusts furniture and fixtures; cleans hardware and toilet fixtures; washes windows; cares for lawn and shrubs; cleans sidewalks and driveways and removes ashes, snow and ice.

6. In addition, may: operate elevator, stack supplies in storage rooms and on shelves; move furniture and equipment.

(Ruymann Decl., Ex. P-2.)  The job description for Group Leader

states:

FUNCTIONAL PURPOSE

In accordance with specific instructions, or well defined work assignments furnished by supervisor, oversees the work of up to approximately 15 laborers, janitors, and cleaners performing general laboring and cleaning duties.

DUTIES AND RESPONSIBILITIES

1. Assigns tasks to be performed by laborers, janitors and cleaners.

2. Checks performance of employees both during and upon completion of assignments.

3. Instructs new employees in cleaning methods and in the proper use of tools and equipment.

4. Oversees the moving of furniture and equipment.

5. In addition may perform laboring tasks as required; acts for supervisor in that person's absence.

(Id., Ex. P-3.)  Plaintiff's accounting of duties and hours was

supported at the administrative hearing by the testimony of

Alvina Wimbush, who was a Maintenance Support Clerk for defendants

and maintained the Maintenance Accounting Record Service System.

(Adm. Tr., at 152-63.)

3

Plaintiff was further bothered by the fact that when Watlington would work overtime into Tour III's shift, Watlington would continue to perform group leader duties and she remained relegated to custodial duties. (Pl. Stmt. of Mat. Facts, at ¶¶ 30, 37, 58.) When plaintiff would work overtime, however, by starting earlier, in Tour II's shift, plaintiff would still only perform custodial duties and was not given group leader duties. (Id. at ¶¶ 32-33.) Various other men in Tour II and Tour III were given the opportunity to perform the duties of Group Leader as well. (Id. at ¶¶ 37-39.) Plaintiff also alleged that at various times DeLaCruz and Dalton "disrespected her" by yelling at her and acting aggressively enough that plaintiff felt it necessary to move back to avoid physical contact. (Pl. Ex. B., Transcript of Pl. Deposition ("Pl. Dep."), at 27, 42-49.)

Plaintiff approached DeLaCruz about getting more help from the "overtime desired list" for Tour III so that she could perform more group leader duties and less custodial duties. (Id. at 9.) Plaintiff's union filed six grievances on her behalf addressing "cross-occupational claims", i.e., performing tasks belonging to the custodial positions while she was in a group leader position. (Pl. Stmt. of Facts, at ¶¶ 43-44; Defs. Stmt. of Facts, at ¶ 10.) These grievances were settled. (Pl. Dep., at 36-39.)

Plaintiff filed two complaints of discrimination. The first was filed on October 15, 1998, after plaintiff sought informal counseling on April 30, 1998. (Defs. Stmt. of Facts, at ¶ 12;

4

Pl. Stmt. of Facts, at ¶ 61.)  In that complaint, plaintiff

alleged that between March and September of 1998:

> (1) Because of gender discrimination . . . George
> Watlington was permitted by the maintenance supervisor
> to perform Group Leader functions on a continual basis
> whereas I am regularly detailed to custodial work
> because of alleged short staffing.

> (2) Male custodial laborers were given higher level pay
> to perform Group Leader duties while I was assigned to
> lower level custodial laborer duties.

> (3) In terms of performing my work, my assignment cards
> continuously reflected a reduction in the amount of
> time I was allotted to perform tasks while male
> custodians were given additional time to perform
> custodial duties.

> (4) My supervisors regularly tried to provoke incidents
> through intimidation, harassment, and humiliation.

> (5) Male workers were given free license to speak their
> minds freely while I am not afforded the same
> opportunity.

(Defs. Ex. P-18.)

Plaintiff filed a second complaint on August 28, 2000, after

seeking informal counseling on August 4, 1999, alleging that

between January 1999 and June 2000 she was "subjected to unlawful

discrimination based on sex [] and in retaliation for prior EEO

activity when . . . treated disparately in regard to work/duty

assignments, overtime assignment, higher level assignments, and

time and attendance."  (Defs. Stmt. of Facts, at ¶ 13; Pl. Stmt.

of Facts, at ¶ 29; dkt. entry no. 18, Ruymann Aff., Ex. 9.)

The two complaints were investigated and consolidated.

(Defs. Stmt. of Facts, at ¶ 14.)  A hearing spanning two days was

held, and the Administrative Judge issued a finding that plaintiff

failed to establish she was discriminated against due to her sex
or prior EEO activity.  (Id.; see Defs. Ex. 8.)  The defendants
issued a Notice of Final Action adopting the Administrative
Judge's finding of no discrimination, and plaintiff appealed to
the Office of Federal Operations of the Equal Employment
Opportunity Commission, which affirmed.  (Defs. Stmt. of Facts,
at ¶¶ 15-16.)  Thus, plaintiff exhausted her administrative
remedies as to the claims of discrimination based on sex and
prior protected activity asserted in the amended complaint filed
in this Court on July 22, 2005.  (Dkt. entry no. 3.)

## DISCUSSION

### I.    Standard of Review for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears
the initial burden of showing that there is no genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  Once the movant has met this prima facie burden, the
non-movant "must set forth specific facts showing that there is a
genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must
present actual evidence that raises a genuine issue of material

6

fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law.  Id. at 248.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## II.  Plaintiff's Title VII Claims

### A.   Discrimination on the Basis of Sex

To succeed on a claim of sexual discrimination under Title VII, a claimant must show that she was subjected to purposeful discrimination.  Weldon v. Kraft, Inc., 896 F.2d 793, 796 (3d Cir. 1990).  To assert a prima facie case of discrimination, plaintiff must allege that (1) she is a member of a protected group; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) other similarly situated individuals not in the protected group received better treatment. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Weldon, 896 F.2d at 797.

Plaintiff has established a prima facie case of sexual discrimination under Title VII by demonstrating that (1) she is female, (2) she was qualified for the position, as defendants concede this point, (3) she was subject to an adverse employment action as outlined supra, and (4) Watlington, a male, who as the only other Group Leader was similarly situated, was not made to perform the type or quantity of custodial duties as plaintiff. However, the Court finds that plaintiff has only made a prima facie case of disparate treatment as to two adverse employment actions: (1) plaintiff was consistently assigned more custodial duties than group leader duties (Am. Compl., "Dual Function Table", at ¶ 23, Adm. Tr., at 152-173), and (2) at least one male

8

custodial employee in Tour III was given the opportunity by DeLaCruz and Dalton to act as Group Leader in Tour III while plaintiff was also working in Tour III, and custodial employees in Tour II were allowed to operate as Group Leaders when working overtime in Tour III.  (Adm. Tr., at 33-40, 140-42.)

Plaintiff's claim that she was given less time to perform certain job tasks than male custodial employees is unsupported by the record.  Plaintiff provides evidence that she was given less time to perform tasks than allotted for the same tasks in the United States Post Office's "MS-47" manual.  (Adm. Tr., 43-48, 295, 432.)  The Court finds that this constitutes an adverse employment action, but plaintiff provides no evidence that there were similarly situated male employees who did not have their time to complete tasks similarly reduced, or that any male employees were given more time to complete similar tasks.  Plaintiff thus fails to establish a prima facie case as to her time allotment argument because she introduces no evidence of similarly situated male employees not made to suffer the same time restraints.[2]

---

[2]  The complaint filed in this Court and plaintiff's second EEOC complaint references "gender based disparate treatment" in terms of "assignments of overtime, higher level assignments (including 204 B), and time and attendance."  (Am. Compl., at ¶ 35.)  But plaintiff makes nothing more than "passing reference" to these issues in her brief, and thus the Court will consider waived any claims arising out of these references that are not addressed in the Court's memorandum opinion.  See Laborer's Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) (finding an issue waived because "passing reference to an issue . . . will not suffice to bring that issue before this court").

The Court rejects defendants' arguments that plaintiff has not established a prima facie case of disparate treatment because plaintiff was not similarly situated to Watlington.  (Defs. Br., at 7.)  The Court finds plaintiff and Watlington were similarly situated, because they shared identical job titles and descriptions and were the only two group leaders at Trenton P&DC, and the fact that they oversaw different shifts and tours does not make their situations sufficiently dissimilar.  The differences in the situations in the cases relied upon by defendants on this point are readily distinguishable from the situation in this case.  See Blanding v. Pa. State Police, 12 F.3d 1303, 1309 (3d Cir. 1993) (probationary trooper who had served less than one year not similarly situated with tenured troopers who had served fifteen and four years, respectively); Stove v. Phila. Sch. Dist., 58 F.Supp.2d 598, 602-03 (E.D. Pa. 1999) (school custodial assistant not similarly situated to school's building engineer).

The Court also rejects defendants' argument that the assignment of custodial duties does not amount to a material adverse personnel action.  (Defs. Br., at 7.)  "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non.  If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a

10

tangible adverse employment action may be found." Durham Life
Ins. Co. v. Evans, 166 F.3d 139, 153 (3d Cir. 1999) (finding that
employer's removal of plaintiff's work files was tangible adverse
employment action for purposes of establishing prima facie case
of sexual harassment under Title VII); see Harry v. City of
Phila., No. 03-661, 2004 WL 1387319, at *5 (E.D. Pa. June 18,
2004) (holding actions constituted adverse employment actions
because they "decreased plaintiff's earning potential and caused
significant disruption to his working conditions"). Moreover,
"whether any or all of these actions by defendants were justified
is not relevant" in determining whether plaintiff has established
the third prong of a prima facie case of sexual discrimination.
Harry, 2004 WL 1387319, at *5. The Court finds that even if
plaintiff did not suffer any immediate economic harm as a result
of the employment actions taken by defendants, the actions
undoubtedly caused "significant disruption in [Plaintiff's]
working conditions." Durham, 166 F.3d at 153.

Because plaintiff has established a prima facie case and
thus raised an inference of unlawful discrimination, the burden
of production shifts to defendants to produce a legitimate non-
discriminatory reason for assigning plaintiff greater custodial
than group leader duties. Weldon, 896 F.2d at 797. Defendants
here assert the following non-discriminatory reasons:

> they believed custodial duties were included within the
> Group Leader Position Description; Tour 3 was short

11

> staffed; plaintiff was assigned custodial duties, in
> addition to the usual Group Leader duties, due to the
> shortage in personnel and in effort to achieve a safe
> and clean facility; and they did not have any authority
> over the assignments and personnel decision on Tour 2.

(Defs. Br., at 13-14.)

Although defendants have proffered a non-discriminatory explanation for their actions, plaintiff has met her burden of showing by a preponderance of the evidence that defendant's reasons are a pretext for discrimination.  Weldon, 896 F.2d at 797.  The plaintiff can meet this burden by either presenting sufficient evidence: (i) to "cast substantial doubt upon" the defendants' proffered reasons for assigning her greater custodial than Group Leader responsibilities "by painting them as weak, implausible, contradictory, or incoherent", or (ii) from which a factfinder could

> reasonably conclude that an illegitimate factor more
> likely than not was a motivating or determinative cause
> of the adverse employment decision (e.g., by showing
> that the employer in the past had subjected [her] to
> unlawful discriminatory treatment, that the employer
> treated other, similarly situated persons not of [her]
> protected class more favorably, or that the employer has
> discriminated against other members of [her] protected
> class or other protected categories of persons.)

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  "[T]he plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but that the illegitimate factor was a determinative factor in the adverse employment decision, that is, that but for the protected characteristic," the plaintiff would have received the job or promotion.  Id. at 764.

12

The Court finds that a reasonable juror here could reasonably conclude that plaintiff's sex "more likely than not was a motivating or determinative cause of the adverse employment decision" because she has demonstrated that "the employer treated other, similarly situated persons not of [her] protected class more favorably." Id. at 765.  The record as a whole supports plaintiff's assertions that defendants' non-discriminatory reasons are pretextual; rather than solving the stated problems by assigning Watlington more custodial duties as well or hiring more overtime workers for plaintiff's shift, defendants assigned greater custodial duties almost exclusively to plaintiff.  The Court further finds plaintiff's and Watlington's positions as group leaders of different Tours does not adequately account for the disparity in assignments.  Moreover, the willingness of DeLaCruz and Dalton to allow other, less experienced and lower-level employees to supplant or augment plaintiff's Group Leader position and responsibilities provides further evidence from which a reasonable juror could infer that discriminatory intent and not work overload was a factor in their decision-making. Thus, viewing the facts in the light most favorable to plaintiff, there remain genuine issues of material fact existing as to the circumstances surrounding the defendants' assignment of plaintiff to more custodial than group leader duties from which a reasonable jury could infer invidious discrimination.

**B.    Retaliation Claims**

To establish a prima facie case of retaliation under Title VII, plaintiff must "tender evidence that (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Moore v. City of Phila., 461 F.3d 331, 340 (3d Cir. 2006) (cites and quotes omitted).

As to the first part of the test, the Court concludes plaintiff engaged in protected activity when she initiated informal EEO counseling on April 30, 1998, which resulted in her filing a formal EEO complaint dated October 15, 1998. (Ruymann Aff., Ex. 1, P-1; Am. Compl., at 2 n.1.) Plaintiff's argument that "her protected activity began before she initiated informal counseling" on April 30, 1998, is not supported by the record. (Pl. Br., at 36.) Plaintiff does not specify what protected activity she engaged in before engaging in EEO informal counseling on April 30, 1998 and filing an EEOC complaint on October 15, 1998. Plaintiff merely argues that she attempted to resolve "this matter" before initiating informal EEO counseling, but the only other complaints in this record are plaintiff's six grievances filed on her behalf by the Union addressing "cross-occupational claims", i.e., performing tasks that belonged to the custodial positions while plaintiff was in a group leader position. (Pl.

14

Stmt. of Facts, at ¶¶ 43-44; Defs. Stmt. of Facts, at ¶ 10.) Moreover, plaintiff testified that the six grievances "were all based on the same issue" of "cross-occupational" duties. (Pl. Dep., at 36-37.) When asked if in the grievances "did you allege that you were being treated differently because you are a woman?", plaintiff responded that "I don't know if I could answer that properly." (Id. at 37-38.)

Although plaintiff's complaints concerning cross-occupational duties involve many of the same facts and allegations as her subsequent complaints of disparate treatment based on sex, "a general complaint of unfair treatment does not translate into a charge of illegal discrimination, and is not protected conduct under Title VII." Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006) (cites and quotes omitted). Plaintiff does not point to any evidence in the record, and this Court did not find any, that she raised complaints of disparate treatment based upon her sex to defendants or anyone else in her workplace before her entering informal counseling on April 30, 1998.

As to the second part of the test, plaintiff must show that a reasonable employee would have found the allegedly retaliatory actions "materially adverse", in that they "might have dissuaded a reasonable worker form making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006). "[P]etty slights, minor annoyances, and simple lack of good manners are normally not sufficient to deter

a reasonable person." Id.  The Court has already concluded that plaintiff was subject to adverse employment actions for purposes of its disparate treatment analysis, and further concludes that those actions discussed supra are "materially adverse" for purposes of establishing a prima facie case of retaliation.

Plaintiff is unable to establish the third part of a prima facie case of retaliation under Title VII because she cannot show "a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Moore, 461 F.3d at 342.  "This third element identifies what harassment, if any, a reasonable jury could link to a retaliatory animus. . . . The ultimate question in any case is an intent to retaliate vel non." Id. (quotes and cites omitted).  "Inconsistent explanations can be an alternative method for establishing a causal link between a protected activity and adverse employment actions." Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001).  Temporal proximity is also relevant, but timing alone is rarely sufficient to establish causation.  Id. at 432.

Plaintiff's argument that her "increased dual functions and the reduction of time she received to perform custodial tasks immediately followed her protected activity" is contradicted by the record.  (Pl. Br., at 35.)  Plaintiff first sought informal

16

counseling on April 30, 1998, which culminated in a complaint
being filed on October 15, 1998, alleging, inter alia:

> "Because of gender discrimination . . . I am regularly
> detailed to custodial work"
> . . . .
> [M]y assignment cards continuously reflected a
> reduction in the amount of time I was allotted to
> perform tasks while male custodians were given
> additional time to perform custodial duties.

(Defs. Ex. 1, P-1.)  Plaintiff asserts in her brief that "as early
as April 16, 1998 [she] began to receive Custodial duties with a
shorter time for completion."  (Pl. Br., at 36.)  Plaintiff's
protected activity was seeking counseling and filing a complaint
about her custodial duties, and plaintiff cannot now attempt to
argue that the issues with her custodial duties arose after, or
"followed her protective activity."  Such an argument raises the
question of what employment issues or actions did her protected
activity concern.  Plaintiff conspicuously fails to address that
question in her circular reasoning in order to avoid the actual
timeline or sequence of events in this action.

Plaintiff's argument that the "frequency and quantity of dual
duties increased" after she engaged in protected activity is also
unsupported by the record.  (Pl. Br., at 35.)  According to the
amended complaint, "[s]tarting in March of 1998, plaintiff began
to perform 60%-70% custodial duties and only 40% - 30% Group
Leader duties."  (Am. Compl., at ¶ 39.)  The "Dual Functions
Table" relied on by plaintiff supports this percentage, and more

17

importantly does not show any increase in the number of custodial hours worked between April 1998 and August 2000.  (Am. Compl., at ¶ 42.)  Moreover, the testimony of Alvina Wimbush, who maintained the Maintenance Accounting Record Service System, supports the conclusion that defendants consistently treated plaintiff "like a regular custodian" before and after her protected activity. (Adm. Tr., at 152-63; Pl. Stmt. of Facts, at ¶ 57.)  Defendants' explanation, even if a pretext, has been consistent throughout the administrative proceedings and in this Court, which further bolsters their argument "the evidence indicates that Mr. DeLaCruz and Mr. Dalton assigned plaintiff custodial duties and treated her in the same manner after she filed her first EEO complaint as they did prior to her protected activity."  (Defs. Br., at 13.)

<div align="center">CONCLUSION</div>

The Court will (1) deny the motion insofar as it seeks summary judgment on plaintiff's claims of disparate treatment under Title VII, and (2) grant the motion insofar as it seeks summary judgment on plaintiff's claims of retaliation under Title VII.  The Court will enter an appropriate order.[3]

<div align="right">s/ Mary L. Cooper<br>**MARY L. COOPER**<br>United States District Judge</div>

___

[3]   The Court will deny as moot defendants' motion to strike plaintiff's sur-reply (dkt. entry no. 24), as the Court did not rely upon the sur-reply in deciding the summary judgment motion.

<div align="center">18</div>